```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
ROXANNE SWAN o/b/o R.M.M.,

                    Plaintiff,              09-CV-0486-S

v.                                          **DECISION**
                                            **And ORDER**
MICHAEL ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,
                    Defendant.

_____
```

**BACKGROUND**

A. PROCEDURAL HISTORY

Plaintiff filed an application for SSI on behalf of her grandson, R.M.M., on March 21, 2006. This application was denied and Plaintiff submitted a timely request for a hearing before an Administrative Law Judge (ALJ). On September 24, 2008, Plaintiff and R.M.M. appeared, with counsel, before ALJ Bruce R. Mazzarella. On November 25, 2008, ALJ Mazzarella issued a decision denying R.M.M.'s application. This became the final decision of the Commissioner on March 16, 2009, when the Appeals Council denied Plaintiff's request for review. Plaintiff filed this action on May 20, 2009.

B. FACTS

Plaintiff, R.M.M.'s paternal grandmother, obtained legal guardianship of R.M.M. when he was an infant due to drug abuse and neglect by his biological parents. T. at 155. Plaintiff alleges that R.M.M. is disabled due to attention deficit hyperactivity disorder (ADHD), oppositional defiant disorder (ODD), speech delay,

and borderline I.Q.  R.M.M. has friends roughly his own age, can make new friends, and generally gets along with others.  However, Plaintiff stated that R.M.M. frequently gets into arguments when playing with kids in the neighborhood.  T. at 288.  Plaintiff stated that R.M.M. joined a football team but quit after getting in a fight with a child there.  T. at 303.  The record reflects that most of R.M.M.'s severe behavioral problems occur in the home; his behavior in school is generally acceptable.

R.M.M., was age 9 on the date of his SSI application and 11 on the date of the ALJ's decision.  At the time of the hearing, he attended the fifth grade in a mainstream classroom with special services provided under a section 504 plan.  See T. at 216-19.  R.M.M. had a consultant teacher, received reading instruction in a smaller class with a special education teacher, and had various required testing accommodations.  He also received speech therapy two times per week and met with the school psychologist.

A questionnaire assessing R.M.M's functioning was completed on April 28, 2006 by his second grade teacher at the request of the Commissioner.  R.M.M.'s teacher noted that he was having several problems in acquiring and using information,[1] attending and completing tasks, and in caring for himself.[2]  T. at 124-29.

---

[1] Problems were noted on all activities in this domain.  Very serious problems (5 on a scale of 5)were noted in reading and comprehending written material and in expressing ideas in written form. Serious problems were noted in providing organized oral explanations, learning new material, and applying problem solving skills in class discussion.

[2] Serious problems with being patient were noted.  Obvious problems included identifying and expressing emotional needs and mood, using appropriate coping skills, and asking for help.

R.M.M.'s writing and reading performance was noted to be below grade level despite a 4:1 student-to-teacher ratio in reading.

R.M.M. completed a psychological assessment on January 27, 2006 with a school psychologist and was determined to have a full scale IQ of 78. T. at 136. R.M.M. was also evaluated by a speech-language pathologist, Melanie Rongo, who opined that he had moderate delays in expressive language and language structure/content as well as difficulty with directions containing more than one linguistic concept. T. at 134. An initial assessment for counseling was completed at the Monsignor Carr Clinic on March 9, 2006. He was diagnosed with ADHD, ODD, nocturnal enuresis (bed wetting), and parent-child relational problems. R.M.M. began counseling with a therapist at Monsignor Carr and saw a psychologist on a monthly basis.

The most recent report cards in the record were for the 2007-2008 school year, when R.M.M. was in fourth grade. These show R.M.M. needed improvement in every activity assessed for reading, writing, listening & speaking, and mathematics. T. at 220-22. R.M.M. also received several less than satisfactory marks in life skills assessed including following rules, demonstrating self-control, understanding and following directions, and making good choices/resolving conflicts well. T. at 229. These report cards again noted that R.M.M. was reading and writing at below grade level. R.M.M. was reassessed by the school's 504 committee at the end of the 2007-2008 school year and it was recommended that all educational accommodations be continued with the possibility of

3

additional accommodations due to R.M.M.'s lack of academic progress. T. at 219. This recommendation was made based on reports from general education and special education teachers, a psychologist, a speech therapist, and the school psychologist. Id. (reports listed do not appear in the record).

**STANDARD OF REVIEW**

A. <u>REVIEW OF COMMISSIONER'S FINAL DETERMINATION</u>

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. <u>Matthews v. Eldridge</u>, 424 U.S. 319, 320 (1976). Additionally, the section directs that when considering such a claim, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings are supported by substantial evidence. <u>See</u> <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de novo). The court is also authorized to review the legal standards employed by the Commissioner in evaluating the Plaintiff's claim.

The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." <u>Lynn v.

Schweiker, 565 F. Supp. 265, 267 (S.D. Tex.1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. A district court has the authority to affirm, reverse, or modify a final decision of the Commissioner with or without remand. 42 U.S.C. § 405(g). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). Remand is warranted where there are gaps in the record and further development of the evidence is needed, or where the ALJ has applied an improper legal standard. Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2004). This is appropriate where "further findings or explanation will clarify the rationale for the ALJ's decision." Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996). However, where the current record contains persuasive proof that a disability exists it is more appropriate to reverse and remand solely for the calculation of benefits. See e.g., Butts, 388 F.3d at 386.

B. REVIEW OF DISABLED CHILD'S SUPPLEMENTAL SECURITY INCOME BENEFIT DETERMINATION

The Social Security Act ("SSA"), provides benefits for disabled children by way of supplemental security income ("SSI"). For the purposes of SSI, a disability exists if a child under the

5

age of eighteen "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). An individual under the age of eighteen who engages in substantial gainful activity may not be considered disabled. § 1382c(a)(C)(ii).

Under SSA regulations, a three-step process is used to determine a child's eligibility for disability benefits. 20 C.F.R. § 416.924(a). First, the ALJ must determine if the child is engaged in substantial gainful activity. § 416.924(b). Second, the child must have a medically determinable impairment, or combination of impairments, that is severe. § 416.924(c). An impairment will not be found to be severe where it is only a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." Id.; See also, Encarnacion v. Astrue, 568 F.3d 72, 75 (2d Cir. 2009). Third, the ALJ must determine whether the child's impairment(s) "medically or functionally equal an impairment listed in an appendix to the regulations." Encarnacion, 568 F.3d at 75 (referring to 20 C.F.R. pt. 404, subpt. P, app. 1).

Children's impairments are evaluated within six domains of activity or functioning.[3] Id. For an impairment to functionally

---

[3] These domains are: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well being." 20 C.F.R. § 416.926a(b)(1).

equal a listed impairment, it "must result in marked limitations in two domains of functioning or an extreme limitation in one domain." Id. (citing 20 C.F.R. § 416.926a(a))(internal quotations omitted). An impairment results in a marked limitation when it "interferes seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An impairment results in extreme limitation when it "interferes very seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)3)(i).

## **DISCUSSION**

Under the first step, the ALJ determined that R.M.M. had not engaged in substantial gainful employment during any time relevant to the decision. Second, the ALJ evaluated R.M.M.'s impairments and determined that he had the following severe impairments: ADHD, ODD/behavioral problems, speech delay, and borderline IQ. It was noted that R.M.M. had previously suffered from enuresis but this was a non-severe impairment as it had resolved with medication. This combination of impairments does not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 416.924, 416.925, 461.926a. Third, the ALJ evaluated whether R.M.M. had an impairment or combination of impairments that functionally equaled the listings. The ALJ assessed the degree of limitation in each of the six functional domains, finding that R.M.M. was markedly limited in only one domain, attending and completing tasks. R.M.M. was found to have

7

less than marked limitation in acquiring and using information, interacting and relating with others, and in health and physical well-being. No limitations were found in moving about and manipulating objects or caring for himself. As R.M.M. did not have a severe limitation in any domain and was not markedly limited in two domains, his impairment did not functionally equal a listed impairment. Therefore, R.M.M. was found to be not disabled, as defined in the SSA.

The Plaintiff asserts that this ruling is not supported by substantial evidence in the record. Plaintiff agreed with the ALJ's finding of marked limitations in the area of attending and completing tasks. Plaintiff further agrees with the findings regarding the lack of limitations in the areas of moving about and manipulating objects and in health and physical well-being. However, Plaintiff asserts that the ALJ erred in not finding marked impairments in the domains of self-care and acquiring and using information.

A. <u>Caring for Yourself</u>

The domain of caring for yourself considers how well a child maintains a healthy emotional and physical state, including appropriately satisfying emotional needs and wants, coping with stress, and taking care of personal health and possessions. 20 C.F.R. 416.926a(k). A school-aged child should be independent in most day-to-day activities, although he may need reminders.

8

With regard to this domain, the ALJ considered the findings of state agency medical consultants, R.M.M.'s school teacher, and the testimony of his grandmother. The medical consultants reported no limitations in this area. T. at 167. His teacher, on the 2006 teacher questionnaire, reported that R.M.M. had obvious problems with identifying emotional needs, responding to changes in his mood, using coping skills, and knowing when to ask for help. T. at 129. The only serious problem noted was with patience. R.M.M. had no problems with taking care of personal hygiene, caring for physical needs, or cooperating in taking medication.

These reports conflict with statements made by Plaintiff to R.M.M.'s psychologist and during testimony regarding R.M.M.'s unwillingness to take care of his personal hygiene and inability to make good judgments regarding safety. However, this court may not overturn the ALJ's decision merely because it could come to an alternative conclusion. Where the ALJ's findings of facts, inferences, and conclusions are supported by substantial evidence in the record, they must be upheld. Green-Younger v. Barnhart, 335 F.3d 99, 105 (2d Cir. 2003).

Upon review of the record, this court finds that the ALJ's determination regarding this domain was supported by substantial evidence and made in accordance with the relevant legal standards.

B. Acquiring and Using information

The domain of acquiring and using information considers how well a child is able to acquire or learn information and how well

9

a child uses the information learned. 20 C.F.R. § 416.926a(g). For the period at issue, R.M.M. was a school-aged child. 20 C.F.R. § 416.926a(g)(2)(iv). A child of this age should be able to learn to read, write, do math, and discuss history and science. Id. In an academic situation, a child uses these skills to demonstrate what he has learned by "reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions." Id. These skills are also needed in daily life for things like reading street signs, telling time, and making change. A child in this age group "should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others." Id. SSA regulations list some general examples of limited functioning in this domain; these examples do not pertain to a particular age group and do not necessarily denote "marked" and "extreme" limitations. 20 C.f.R. § 416.926a(g)(3).[4]

In assessing R.M.M. under this domain, the ALJ noted that R.M.M. had a borderline IQ (full scale 78). The ALJ noted R.M.M.'s functioning in school, the special help he received, and some of the problems indicated by the teacher report from April 2006. The

---

[4]The examples given are: (i) does not understand words about space, size, or time (e.g., in/under, big/little, morning/night); (ii) cannot rhyme words or sounds in words; (iii) has difficulty recalling important things learned in school yesterday; (iv) has difficulty solving mathematics questions or computing arithmetic answers; or (v) talks only in short, simple sentences and has difficulty explaining what he means. 20 C.F.R. § 416.926a(g)(3)(i)-(v).

10

ALJ appears to have placed the greatest weight on the consultative psychological exam conducted in May 2006, the report of state agency medical consultant J. Pauporte, M.D., and an assessment made by Pediatrician Edward Brown, M.D. Based on these assessments the ALJ found that R.M.M. had less than marked limitations in acquiring and using information.

At first glance this determination appears to have substantial support, however, the court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn, 565 F. Supp. at 267. In evaluating the record as a whole, it the ALJ failed to apply the proper legal standard as he did not give proper weight to the evidence evaluated and ignored substantial evidence contained in the record.

State agency medical consultants are qualified experts in the evaluation of disability claims and, as such, their opinions may constitute substantial evidence if they are consistent with the record as a whole. Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983). In the instant case, the record as a whole does not support the opinion of state agency medical consultant, Dr. Pauporte.

Dr. Pauporte completed a childhood disability evaluation of R.M.M. based on an evaluation of his records. Dr. Pauporte opined that R.M.M. had less than marked limitations in acquiring and using information. T. at 166. In explaining the evidence used in reaching this opinion, Dr. Pauporte noted only that R.M.M. had a

11

full scale IQ of 78 and that, according to the psychological consultative exam records, his expressive and receptive language appeared to be within normal limits. Id. This report does not appear to take into consideration either the opinion of R.M.M.'s teacher or the treatment records from Monsignor Carr which were made available for review. Furthermore, this report conflicts with the January 2006 speech-language assessment conducted, the intake assessment at Monsignore Carr, and with statements and evidence provided by R.M.M.'s teachers. See T. at 134, 124-31, 150-52. As this opinion is not consistent with the record as a whole, this opinion should not be considered substantial evidence.

The ALJ also appears to have given significant weight to the opinion of Pediatrician Edward Brown, M.D. The ALJ gives weight to the Childhood Disability Report completed by Dr. Brown which notes that R.M.M.'s communication skills were age-appropriate. T. at 189. As Dr. Brown was R.M.M.'s primary treating physician, his opinion would generally merit controlling weight under the treating physician rule. However, R.M.M. saw Dr. Brown for general check-ups, immunizations, and childhood illnesses. T. at 176-87. Dr. Brown did not treat R.M.M. for the cognitive and psychological impairments at issue here. The ALJ fails to acknowledge an assessment submitted by a certified physicians assistant, apparently from Dr. Brown's office, which evaluates R.M.M.'s functioning in the domain of health and physical well-being but states that the remaining domains of functioning would be best

12

evaluated by Monsignor Carr facilities. T. at 175. As suggested by this second report, controlling weight should have been given to R.M.M.'s treating psychologist at Monsignor Carr, who's opinion was not addressed by the ALJ.

While the ALJ acknowledged the 2006 teacher questionnaire, it is unclear how much weight, if any, this report was given. While reports from teachers do not constitute medical evidence, proper weight must be given to the testimony and submissions of individuals who have significant contact with the child. See e.g., Carballo ex rel. Cortes v. Apfel, 34 F. Supp. 2d 208, 218 (S.D.N.Y. 1999). The ALJ noted that this report revealed R.M.M. generally had "obvious" to "serious" problems in acquiring and using information. The ALJ misstated and under emphasized the teacher's responses to this questionnaire. R.M.M.'s second grade teacher noted problems in all areas listed under acquiring and using information, with very serious problems in reading/comprehending written material, and expressing ideas in written form. T. at 125. The teacher also reported serious problems with providing organized oral explanations and adequate descriptions, learning new material, and applying problem-solving skills.

School reports from 2008 also noted problems with reading and language. It was recommended that R.M.M.'s special services and accommodations continue, and possibly increase, due to R.M.M.'s lack of progress academically. T. at 219. R.M.M.'s report cards from grade 4 (2007-2008) also note problems and the need for

improvement in all areas assessed under reading, writing, listening and speaking. T. at 220-30. It is unclear whether any of this additional information provided by the school was considered by the ALJ.

Based on the record, the Court finds that the ALJ failed to apply the proper legal standard. The record as a whole does not support the assessment of the state medical consultant, Dr. Pauporte with regard to the domain of acquiring and using information. The opinion of a treating physician should be given controlling weight unless it is inconsistent with other evidence as they are able to provide a detailed history and evaluation of a patient's impairments. Groff v. Comm'r of Soc. Sec., 7:05-CV-54, 2008 U.S. Dist. LEXIS 68977, (N.D.N.Y. 2008). While the opinion of a non-examining consultant may constitute substantial evidence where consistent with the record as a whole, that is not the case here. Mongeur, 722 F.2d at 1039. The report of Dr. Pauporte is not consistent with the opinions of R.M.M.'s examining psychologists and teachers. The ALJ does not attempt to reconcile these differences. The ALJ does not acknowledge the reports from the school psychologist, the speech-language pathologist, or R.M.M.'s primary psychologist in his decision. While the ALJ did reference the opinions of R.M.M.'s pediatrician and second grade teacher, he failed to clarify what weight was given to these opinions. The regulations require the ALJ to "consider all relevant evidence in determining a child's functioning, including

14

information from the child's teachers". Hickman v. Astrue, No. 7:07-CV-1077, 2010 U.S. Dist. LEXIS 75706, *23 (N.D.N.Y. 2010).

The ALJ also fails to give appropriate weight to the opinion of R.M.M.'s second grade teacher and fails to even consider teacher evaluations from the 2007-2008 school year. Teachers are able to observe and interact with a child on a daily basis and can provide invaluable insight regarding impairments in functioning not readily observable in a brief evaluation. This Court has previously held that the opinion of an individual, like a teacher, who works with a child on a daily basis is an invaluable resource in determining the severity of an impairment and must be considered carefully. See Mohamed v. Astrue, 08-CV-0598S, 2010 U.S. Dist. LEXIS 64808, *13-14 (W.D.N.Y. June 29, 2010); see also 20 C.F.R. § 404.1513(d)(2)(listing teachers as non-medical sources that may be used to show the severity of impairments). The ALJ erred in dismissing the teacher opinions regarding R.M.M's impairments.

Accordingly, the Court finds that the ALJ's conclusion that R.M.M. suffered a less than marked limitation in the area of acquiring and using information is not supported by substantial evidence in the record.

## CONCLUSION

For the forgoing reasons, the Commissioner's motion for judgment on the pleadings is hereby denied. The determination denying benefits is hereby reversed and remanded for further

proceedings.  In re-evaluating the evidence, the Commissioner should complete the record by obtaining and considering the reports from assessments conducted in conjunction with R.M.M.'s May 2008 505 plan re-evaluation.  Furthermore, the ALJ should consider the record in its entirety and explain what weight is being given to the various expert opinions.

    ALL OF THE ABOVE IS SO ORDERED.

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
           August 11, 2010